# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **FIRST HORIZON BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. Civil Action No. _____** |
| | ) | |
| **INTELLECTUAL VENTURES** | ) | |
| **MANAGEMENT, LLC, INTELLECTUAL** | ) | |
| **VENTURES I LLC, INTELLECTUAL** | ) | |
| **VENTURES II LLC, CALLAHAN** | ) | |
| **CELLULAR L.L.C., and OL SECURITY** | ) | |
| **LIMITED LIABILITY COMPANY** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

COMES NOW Plaintiff First Horizon Bank ("First Horizon" or "Plaintiff") and for its Complaint against Defendants Intellectual Ventures Management, LLC ("Intellectual Ventures Management"), Intellectual Ventures I LLC ("Intellectual Ventures I"), Intellectual Ventures II LLC ("Intellectual Ventures II"), Callahan Cellular L.L.C. ("Callahan Cellular"), and OL Security Limited Liability Company ("OL Security") (collectively, "Defendants") state the following:

## I. NATURE OF THE ACTION

1.     This is an action for a declaratory judgment that First Horizon does not infringe United States Patent Number 7,949,785 (the "'785 Patent"), United States Patent Number 8,332,844 (the "'844 Patent"), United States Patent Number 8,407,722 (the "'722 Patent"), United States Patent Number 10,567,391 (the "'391 Patent"), and United States Patent Number 7,464,862 (the "'862 Patent") (collectively, the "Patents-in-Suit").

## II. THE PARTIES

2.      First Horizon is a banking corporation organized and existing under the laws of the State of Tennessee and having its principal place of business located at 165 Madison Ave, Memphis, Tennessee 38103. First Horizon provides banking and financial-related products and services to its customers, including products and services concerning secure payment processing and point-of-sale transactions. First Horizon Bank is the successor by conversion to First Tennessee Bank National Association, a national banking association.

3.      Upon information and belief, Defendant Intellectual Ventures Management is a limited liability company formed under the laws of the State of Washington and having its principal place of business located at 3150 139th Ave SE, BLDG 4, Bellevue, Washington 98005.

4.      Upon information and belief, Defendant Intellectual Ventures I is a limited liability company formed under the laws of the State of Delaware and having its principal place of business located at 3150 139th Ave SE, BLDG 4, Bellevue, Washington 98005.

5.      Upon information and belief, Defendant Intellectual Ventures II is a limited liability company formed under the laws of the State of Delaware and having its principal place of business located at 3150 139th Ave SE, BLDG 4, Bellevue, Washington 98005.

6.      Upon information and belief, Defendant Callahan Cellular is a limited liability company formed under the laws of the State of Delaware and having its principal place of business located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7.    Upon information and belief, Defendant OL Security is a limited liability company formed under the laws of the State of Delaware and having its principal place of business located at 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

### III. THE PATENTS

8.    The '785 Patent, entitled SECURE VIRTUAL COMMUNITY NETWORK SYSTEM, names Hasan S. Alkhatib, Fouad A. Tobagi, and Farid F. Elwailly as the inventors and states an issue date of May 24, 2011. A true and correct copy of the '785 Patent is attached hereto as Exhibit 1.

9.    Upon information and belief, Defendant Intellectual Ventures I is the assignee of the '785 Patent and has the right to enforce the '785 Patent.

10.    The '844 Patent, entitled ROOT IMAGE CACHING AND INDEXING FOR BLOCK-LEVEL DISTRIBUTED APPLICATION MANAGEMENT, names Pradip Kulkarni, Mukul Kumar, Adhir Potdar, Richard Au, and Tung Nguyen as the inventors and states an issue date of December 11, 2012. A true and correct copy of the '844 Patent is attached hereto as Exhibit 2.

11.    Upon information and belief, Defendant Intellectual Ventures II is the assignee of the '844 Patent and has the right to enforce the '844 Patent.

12.    The '722 Patent, entitled ASYNCHRONOUS MESSAGING USING A NODE SPECIALIZATION ARCHITECTURE IN THE DYNAMIC ROUTING NETWORK, names Timothy Tuttle and Karl E. Rumelhart as the inventors and states an issue date of March 26, 2013. A true and correct copy of the '722 Patent is attached hereto as Exhibit 3.

13.    Upon information and belief, Defendant Intellectual Ventures I is the assignee of the '722 Patent and has the right to enforce the '722 Patent.

14.    The '391 Patent, entitled GRADUATED AUTHENTICATION IN AN IDENTITY MANAGEMENT SYSTEM, names Dick C. Hardt as the inventor and states an issue date of February 18, 2020. A true and correct copy of the '391 Patent is attached hereto as Exhibit 4.

15.    Upon information and belief, Defendant Callahan Cellular is the assignee of the '391 Patent and has the right to enforce the '391 Patent.

16.    The '862 Patent, entitled APPARATUS & METHOD FOR POS PROCESSING, names Steven V. Bacastow as the inventor and states an issue date of December 16, 2008. A true and correct copy of the '862 Patent is attached hereto as Exhibit 5.

17.    Upon information and belief, Defendant OL Security is the assignee of the '862 Patent and has the right to enforce the '862 Patent.

18.    Upon information and belief, Defendant Intellectual Ventures Management controls, manages, licenses and/or enforces one or more portfolios of patents that have been assigned to others, which includes the Patents-in-Suit, whose ownership and/or rights are assigned and/or licensed to Intellectual Ventures Management, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and/or OL Security and/or which share a common nucleus (collectively "Intellectual Ventures Management's Patent Portfolio" or "Patent Portfolio").

19.    Upon information and belief, Intellectual Ventures Management is the agent and representative of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio and has the right, by or on behalf of the assignees, to enter into agreements concerning

matters relating to the patents in Intellectual Ventures Management's Patent Portfolio and concerning matters relating to the licensing and enforcement of the patents in its Patent Portfolio.

20.    Upon information and belief, Intellectual Ventures Management's Patent Portfolio includes patents that have been assigned to Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, including the Patents-in-Suit.  Intellectual Ventures Management has held itself out as having the right and, upon information and belief does have the right, by or on behalf of Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, to enter into agreements concerning matters relating to the Patents-in-Suit and to license and enforce the Patents-in-Suit.

21.    Upon information and belief, Intellectual Ventures Management has held itself out as, and is, the agent and representative of Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security concerning at least the patents in Intellectual Ventures Management's Patent Portfolio, including the Patents-in-Suit.

22.    Upon information and belief, all rights, including enforcement, in the Patents-in-Suit are possessed by Intellectual Ventures Management, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and/or OL Security.

23.    Upon information and belief, Intellectual Ventures Management has acted in its capacity as an agent and representative of Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security concerning the patents in Intellectual Ventures Management's Patent Portfolio in the State of Tennessee and the Western District of Tennessee, including by entering into agreements concerning the assignees' patents in its Patent Portfolio, seeking to license those

patents, and threatening to enforce those patents it alleges are infringed and not licensed, including in its actions as to First Horizon concerning the Patents-in-Suit alleged in this Complaint.

24.    Upon information and belief, Steve Joroff is an employee and/or an agent and representative of Intellectual Ventures Management, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security and has acted in his capacity as an employee and/or an agent and representative of Intellectual Ventures Management, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security with at least the right to enter into agreements concerning the Patents-in-Suit and to license and enforce the Patents-in-Suit by or on behalf of Intellectual Ventures Management, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, and has done so in the State of Tennessee and the Western District of Tennessee, including in his actions as to First Horizon concerning the Patents-in-Suit alleged in this Complaint.

25.    Upon information and belief, Intellectual Ventures Management, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security have conspired to monetize the assignees' patents in Intellectual Ventures Management's Patent Portfolio by licensing those patents and by enforcing those patents through patent infringement litigation or otherwise, and have conspired to monetize the Patents-in-Suit in the State of Tennessee.

26.    Upon information and belief, Intellectual Ventures Management, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security are owned and/or operated by a common entity or are otherwise under common control.

27.    Upon information and belief, Intellectual Ventures Management is the agent and/or legal representative of the assignees of the patents in Intellectual Ventures Management's Patent

Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, such that Intellectual Ventures Management is authorized to act on behalf of the assignees of the patents in its Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, including as to licensing and/or enforcement of the Patent-in-Suit.

28.    Upon information and belief, on its own behalf and by and on behalf of the assignees of the patents in its Patent Portfolio, Intellectual Ventures Management accuses entities of infringing the assignees' patents in its Patent Portfolio, offers licenses of those patents to those entities, purports to negotiate licenses of those patents with those entities, and threatens that the patents will be enforced through patent litigation if the entities refuse to pay the license fee demanded by Intellectual Ventures Management.

29.    Upon information and belief, under the direction and/or control of Intellectual Ventures Management, owners of patents within Intellectual Ventures Management's Patent Portfolio have assigned patents to other owners of patents also within Intellectual Ventures Management's Patent Portfolio.

30.    For example, upon information and belief, Callahan Cellular has assigned hundreds of patents in Intellectual Ventures Management's Patent Portfolio to other entities also within Intellectual Ventures Management's Patent Portfolio and/or to entities related to Intellectual Ventures Management, including Intellectual Ventures I, Intellectual Ventures II, and related entities. Upon information and belief, Callahan Cellular has assigned patents in the Patent Portfolio under the direction and/or control of Intellectual Ventures Management.

31.     Upon information and belief, Intellectual Ventures Management and Callahan Cellular, Intellectual Ventures I, and Intellectual Ventures II  are each owned and/or operated by a common entity or are otherwise under common control or Callahan Cellular, Intellectual Ventures I, and Intellectual Ventures II are owned, managed, and/or controlled by Intellectual Ventures Management. Upon information and belief, Intellectual Ventures Management is also the agent and representative of Callahan Cellular, Intellectual Ventures I, and Intellectual Ventures II.

32.     Upon information and belief, many of the patents in Intellectual Ventures Management's Patent Portfolio that were assigned by Callahan Cellular to other assignees of patents in the Patent Portfolio and/or who are related to Intellectual Ventures Management have been subsequently asserted by those assignees, including Intellectual Ventures I, Intellectual Ventures II, and/or related entities, in patent infringement litigation against entities who refused to pay the license fee demanded by Intellectual Ventures Management.

33.     By way of example, upon information and belief, Defendant Callahan Cellular assigned United States Patent Nos. 7,016,963, 9,092,546 and 9,686,378 to Defendant Intellectual Ventures II on September 18, 2018.

34.     Upon information and belief, as part of the assignment, the same individual (Tracy Lemke) signed on behalf of both Defendant Callahan Cellular (as an Authorized Person) and Defendant Intellectual Ventures II (as the Assistant Company Secretary).

35.     Upon information and belief, Defendant Intellectual Ventures II then sued VMware Inc. for infringement of each of those patents in the U.S. District Court for the Western District of Texas. *See Intellectual Ventures II LLC v. VMware Inc.*, No. 6:20-cv-00220-ADA (W.D. Tex.

filed Mar. 25, 2020); *Intellectual Ventures II LLC v. VMware Inc.*, No. 1:20-cv-00457-ADA (W.D. Tex. filed Mar. 25, 2020).

36.     By way of another example, upon information and belief, Defendant Callahan Cellular assigned United States Patent No. RE42,153 to Defendant Intellectual Ventures II on May 6, 2016.

37.     Upon information and belief, as part of the assignment, Tracy Lemke signed on behalf of Defendant Callahan Cellular as an Authorized Person.

38.     Upon information and belief, as alleged above, Tracy Lemke was the Assistant Company Secretary of Defendant Intellectual Ventures II at the time of the assignment.

39.     Upon information and belief, Defendant Intellectual Ventures II then separately sued Arista Networks, Inc. and Hewlett Packard Enterprise Company for infringement of United States Patent No. RE 42,153 in the U.S. District Court for the Western District of Texas. *See Intellectual Ventures I LLC, and Intellectual Ventures II LLC v. Arista Networks, Inc.*, No. 6:20-cv-00749-ADA (W.D. Tex. filed Aug. 18, 2020); *Intellectual Ventures I LLC, and Intellectual Ventures II LLC v. Hewlett Packard Enter. Co.*, No. 6:21-cv-00226-ADA (W.D. Tex. filed Mar. 9, 2021).

40.     As another example, upon information and belief, Defendant Callahan Cellular assigned United States Patent No. 7,199,715 to Defendant Intellectual Ventures II on August 4, 2016.

41.    Upon information and belief, as part of the assignment, the same individual (Tracy Lemke) signed on behalf of both Defendant Callahan Cellular and Defendant Intellectual Ventures II as an Authorized Person of both parties.

42.    Upon information and belief, Defendant Intellectual Ventures II then sued FedEx Corporation, *et al.*, for infringement of United States Patent No. 7,199,715 in the U.S. District Court for the Eastern District of Texas. *See Intellectual Ventures II LLC v. FedEx Co., et al*, No. 2:16-cv-00980-JRG (E.D. Tex. filed Aug. 31, 2016).

43.    As another example, upon information and belief, Defendant Callahan Cellular assigned United States Patent No. 6,782,370 to Defendant Intellectual Ventures II on Feb. 15, 2016.

44.    Upon information and belief, as part of the assignment, Tracy Lemke signed on behalf of Defendant Callahan Cellular as an Authorized Person.

45.    Upon information and belief, as alleged above, Tracy Lemke was the Assistant Company Secretary of Defendant Intellectual Ventures II at the time of the assignment.

46.    Upon information and belief, Defendant Intellectual Ventures II then separately sued  FTD Companies, Inc. and J.Crew Group, Inc. for infringement of United States Patent No. 6,782,370 in the U.S. District Court for the Eastern District of Texas. *See Intellectual Ventures I LLC, and Intellectual Ventures II LLC v. FTD Cos., Inc.*, No. 6:16-cv-00195-JRG (E.D. Tex. filed on Mar. 8, 2016); *Intellectual Ventures I LLC, and Intellectual Ventures II LLC v. J.Crew Grp., Inc.*, No. 6:16-cv-00196-JRG (E.D. Tex. filed Mar. 8, 2016).

47.     Upon information and belief, Defendant OL Security has also assigned multiple patents in Intellectual Ventures Management's Patent Portfolio to other entities also within Intellectual Ventures Management's Patent Portfolio and/or to entities related to Intellectual Ventures Management, including Intellectual Ventures Assets 132 LLC, Intellectual Ventures Assets 150, LLC, and related entities.  Upon information and belief, OL Security has assigned patents in the Patent Portfolio under the direction and/or control of Intellectual Ventures Management.

48.     Upon information and belief, Intellectual Ventures Management and OL Security, Intellectual Ventures Management and Intellectual Ventures Assets 132 LLC, and Intellectual Ventures Management and Intellectual Ventures Assets 150, LLC, are each owned and/or operated by a common entity or are otherwise under common control or OL Security, Intellectual Ventures Assets 132 LLC, and Intellectual Ventures Assets 150, LLC are owned, managed, and/or controlled by Intellectual Ventures Management. Upon information and belief, Intellectual Ventures Management is also the agent and representative of OL Security, Intellectual Ventures Assets 132 LLC, and Intellectual Ventures Assets 150, LLC.

49.     By way of example, upon information and belief, on October 29, 2019 Defendant OL Security assigned U.S. Patent Nos. 7,853,250, 9,042,914, 9,800,612, 10,320,840, 7,778,606, 7,603,710, 8,078,722, 8,122,506, 8,661,542, and Application No. 16/436,566 to Intellectual Ventures Assets 132 LLC.

50.     Upon information and belief, as part of the assignment of these patents within the patent portfolio, the same individual (Lawrence Froeber) signed on behalf of both OL Security (as the CFO) and Intellectual Ventures Assets 132 LLC (as the CFO).

11

51.     Upon information and belief, Lawrence Froeber was also the CFO of Defendant Intellectual Ventures Management at the time of the assignment. *See* https://www.intellectualventures.com/who-we-are/leadership/larry-froeber (last accessed Oct. 31, 2024).

52.     Upon information and belief, as part of the assignment, the correspondence data identified Defendant Intellectual Venture Management as the "Correspondent Name" and identified Intellectual Ventures Management's principal place of business, 3150 139th Ave SE, BLDG 4, Bellevue, Washington 98005, as the "Address."

53.     By way of another example, upon information and belief, Intellectual Ventures Assets 150 LLC assigned United States Patent No. 6,970,843, among other patents, to Kioba Processing, LLC on November 15, 2019. Upon information and belief, as part of the assignment of these patents within the patent portfolio, Lawrence Froeber signed on behalf of Intellectual Ventures Assets 150 LLC as the CFO. Upon information and belief, Lawrence Froeber was also the CFO of Defendant Intellectual Ventures Management at the time of the assignment. *See* https://www.intellectualventures.com/who-we-are/leadership/larry-froeber (last accessed Oct. 31, 2024).

54.     Upon information and belief, one or more patents in Intellectual Ventures Management's Patent Portfolio that were assigned by OL Security to other assignees of patents in the Patent Portfolio and/or who are related to Intellectual Ventures Management have been subsequently asserted by those assignees in patent infringement litigation against entities who refused to pay the license fee demanded by Intellectual Ventures Management.

55.    By way of another example, upon information and belief, Defendant OL Security assigned United States Patent No. 6,894,639 to Defendant Intellectual Ventures II on March 28, 2024.

56.    Upon information and belief, as part of the assignment, the same individual (Michelle Macartney) signed on behalf of both Defendant OL Security (as an Authorized Person) and Defendant Intellectual Ventures II (as the Assistant Company Secretary).

57.    Upon information and belief, as part of the assignment, the correspondence data identified Intellectual Ventures Management as the "Correspondent Name" and identified Intellectual Ventures Management's principal place of business, 3150 139th Ave SE, BLDG 4, Bellevue, Washington 98005, as the "Address."

58.    Upon information and belief, Intellectual Ventures II then sued Tesla, Inc. for infringement of United States Patent No. 6,894,639 in the United States District Court for the Western District of Texas. *See Intellectual Ventures II LLC v. Tesla, Inc.*, No. 6:24-cv-00188-ADA (W.D. Tex. filed Apr. 12, 2024).

59.    Accordingly, upon information and belief, and as shown above, Intellectual Ventures Management, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security are owned and/or operated by a common entity or are otherwise under common control or Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security are owned, managed, and/or controlled by Intellectual Ventures Management, and Intellectual Ventures Management is the agent and representative of Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security.

## IV. JURISDICTION AND VENUE

60.     This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

61.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338(a), as it is a civil action arising under an Act of Congress relating to a patent; under 28 U.S.C. § 1331 as it involves a federal question; and under 28 U.S.C. § 2201 and § 2202, as the action seeks a declaratory judgment and further relief.

62.     This Court has personal jurisdiction over Intellectual Ventures Management because, among other things, Intellectual Ventures Management has conducted business relating to the licensing and enforcement of patents in the State of Tennessee, as discussed herein, thus establishing the requisite minimum contact with the State of Tennessee.

63.     This Court has personal jurisdiction over Intellectual Ventures I because, among other things, Intellectual Ventures I has conducted business relating to the licensing and enforcement of patents in the State of Tennessee, as discussed herein, thus establishing the requisite minimum contact with the State of Tennessee.

64.     This Court has personal jurisdiction over Intellectual Ventures II because, among other things, Intellectual Ventures II has conducted business relating to the licensing and enforcement of patents in the State of Tennessee, as discussed herein, thus establishing the requisite minimum contact with the State of Tennessee.

65.     This Court has personal jurisdiction over Callahan Cellular because, among other things, Callahan Cellular has conducted business relating to the licensing and enforcement of

patents in the State of Tennessee, as discussed herein, thus establishing the requisite minimum contact with the State of Tennessee.

66.    This Court has personal jurisdiction over OL Security because, among other things, OL Security conducted business relating to the licensing and enforcement of patents in the State of Tennessee, as discussed herein, thus establishing the requisite minimum contact with the State of Tennessee.

67.    Venue is proper in this District under 28 U.S.C. § 1391 because Intellectual Ventures Management, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security are subject to personal jurisdiction in this judicial district, and have directed their business, licensing, and enforcement activities at this judicial district, and a substantial part of the events giving rise to the claims occurred in this judicial district, as discussed below.

68.    Intellectual Ventures Management, by and through its representatives, on its own behalf and as the agent and representative of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, has conducted business relating to the licensing and enforcement of patents in its Patent Portfolio in the State of Tennessee, including by offering specific terms for First Horizon in the State of Tennessee to license the assignees' patents in its Patent Portfolio and by sending threatening emails and letters into Tennessee asserting that First Horizon is required to license the assignees' patents in its Patent Portfolio, that First Horizon infringes the assignees' patents in its Patent Portfolio, and that litigation will be pursued against companies alleged to infringe who do not pay to license the assignees' patents in its Patent

Portfolio, including the Patents-in-Suit, all with full knowledge that First Horizon is an entity having its principal place of business located in the State of Tennessee.

1. **At Least As Early As 2014, Defendants Were Conducting Their Business Of Licensing and Enforcement of the Assignees' Patents in Intellectual Ventures Management's Patent Portfolio in Tennessee.**

69.     In early 2014, Intellectual Ventures Management, on its own behalf and by and on behalf of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including upon information and belief one or more Defendants, actively met, communicated and negotiated with First Horizon located in the State of Tennessee and in the Western District of Tennessee, in relation to licensing and enforcement of the assignees' patents in Intellectual Ventures Management's Patent Portfolio.

70.     In March of 2014, Intellectual Ventures Management's Senior Manager of Market Development, Luke Ekhoff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio, met telephonically with counsel for First Horizon located within the State of Tennessee to discuss licensing all of the assignees' patents in Intellectual Ventures Management's Patent Portfolio.

71.     In March of 2014, Mr. Ekhoff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio, sent an email to counsel for First Horizon, which is located within the State of Tennessee, to arrange a subsequent in-person meeting to discuss licensing all of the assignees' patents in the Patent Portfolio.

72.     On April 24, 2014, representatives of Intellectual Ventures Management, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio, communicated with counsel for First Horizon to discuss licensing the assignees' patents in Intellectual Ventures Management's Patent Portfolio.

73.     Between the April 24, 2014 meeting and November of 2014, Intellectual Ventures Management, on its own behalf and by and on behalf of all assignees of the patents in its Patent Portfolio,  engaged in extensive negotiations with First Horizon in the State of Tennessee regarding licensing the assignees' patents in the Patent Portfolio.

74.     Ultimately, on November 12, 2014, the negotiations in 2014 ended without a license of the assignees' patents in Intellectual Ventures Management's Patent Portfolio.

75.     Accordingly, upon information and belief, Intellectual Ventures Management, on its own behalf and by and on behalf of the assignees of the patents in its Patent Portfolio, including upon information and belief one or more Defendants, actively conducted business in the State of Tennessee from at least February to November of 2014 that included offers to and negotiations with First Horizon, which resides in the State of Tennessee and in the Western District of Tennessee, regarding the licensing of the assignees' patents in Intellectual Ventures Management's Patent Portfolio by First Horizon in the State of Tennessee.

**2.     Multiple Contracts Have Been Negotiated And Executed As Part of Defendants' Business in Tennessee Of Licensing and Enforcement of the Assignees' Patents in Intellectual Ventures Management's Patent Portfolio.**

76.     Beginning in as early as 2013, Intellectual Ventures Management, on its own behalf and by and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent

17

Portfolio including one or more Defendants, targeted First Horizon, residing in the State of Tennessee and the Western District of Tennessee, and sent threatening correspondence asserting, *inter alia*, that the assignees' patents in Intellectual Ventures Management's Patent Portfolio are infringed and are required to be licensed by First Horizon.

77.    Upon information and belief, at least as early as February of 2014, Intellectual Ventures Management, by and through its representatives, on its own behalf and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including one or more Defendants, also conducted extensive business activities in the State of Tennessee related to the licensing and enforcement of the assignees' patents in Intellectual Ventures Management's Patent Portfolio within the State of Tennessee, including by engaging in extensive negotiations with First Horizon located in the State of Tennessee and in this judicial district in relation to licensing and enforcement of those patents.

78.    Upon information and belief, starting as early as February 2014, Intellectual Ventures Management, on its own behalf and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including one or more Defendants, entered into multiple confidentiality agreements and extensions with First Horizon, located in the State of Tennessee and in the Western District of Tennessee, in relation to Intellectual Ventures Management's efforts to license and enforce the assignees' patents in its Patent Portfolio in Tennessee.

a.    **The Parties Executed a February 2014 Contract Whose Terms Survive Termination Or Expiration.**

79.    Upon information and belief, as early as February 2014, Intellectual Ventures Management, on its own behalf and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including one or more Defendants, negotiated with First Horizon,

18

located in the State of Tennessee, in relation to licensing and enforcement of the assignees' patents

in Intellectual Ventures Management's Patent Portfolio.

80.     Upon information and belief, on February 28, 2014, Defendant Intellectual

Ventures Management on its own behalf and on behalf of all assignees of the patents in Intellectual

Ventures Management's Patent Portfolio including one or more Defendants, and First Horizon's

predecessors-in-interest, First Horizon National Corporation and First Tennessee Bank National

Association, located in the State of Tennessee, entered into and executed a contract entitled

"Mutual Confidentiality Agreement" regarding the disclosure, use, and maintaining confidentiality

of certain information and materials (1) of Defendant Intellectual Ventures Management, (2) of

First Horizon located in the State of Tennessee, and (3) of "any 'individual, corporation, trust,

partnership, joint venture, limited liability company, association, unincorporated organization or

other legal entity'" that either Defendant Intellectual Ventures Management or First Horizon,

"directly or indirectly Controls, is Controlled by, or is under common Control with" (hereinafter

"February 2014 Contract"). The February 2014 Contract further defined "Control" as follows:

> "Control" (and its derivatives) means (a) ownership or control, directly or indirectly, of
> more than fifty percent (50%) of the voting stock or other ownership interest of an Entity, or
> (b) both (i)  ownership or control, directly or indirectly, of fifty percent (50%) or less of the
> voting stock or other ownership interest of an Entity representing the maximum percentage of
> such voting stock or other ownership interest permitted by local law, and (ii) the power to direct
> or cause, directly or indirectly, the direction of the management and policies of such Entity.

81.     Although the February 2014 Contract states that its initial term was for a period of

ninety (90) days, it specifically provides that the obligations "will survive the expiration or

termination of the Term."

82.     Upon information and belief, the obligation to perform and/or not perform specific

actions under the February 2014 Contract survived the termination or expiration of the February

2014 Contract and continues today.

83.     Upon information and belief, the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security are each an "individual, corporation, trust, partnership, joint venture, limited liability company, association, unincorporated organization or other legal entity" that Defendant Intellectual Ventures Management "directly or indirectly Controls, is Controlled by, or is under common Control with" in accordance with the terms of the February 2014 Contract, including those terms that survive expiration or termination.

84.     Upon information and belief, the February 2014 Contract, including those terms that survive expiration or termination, is a legally binding agreement that created obligations, whether then existing or subsequently arising, to perform and/or not perform specific actions.

85.     Upon information and belief, the February 2014 Contract with First Horizon, located in the State of Tennessee, created obligations, whether then existing or subsequently arising, for Intellectual Ventures Management and the assignees of patents in its Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security to perform and/or not perform specific actions.

86.     Upon information and belief, the obligations created by the February 2014 Contract, whether then existing or subsequently arising, for Intellectual Ventures Management and the assignees of patents in Intellectual Ventures Management's Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, survived the termination or expiration of the February 2014 Contract and continue in force today.

87.     Upon information and belief, since February 28, 2014 and continuing through the present day, Intellectual Ventures Management and the assignees of patents in the Intellectual

Ventures Management Patent Portfolio, including, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, have been obligated to continue to perform and/or not perform the specific actions according to the terms which were negotiated, agreed to, and memorialized in the February 2014 Contract and which the parties agreed would survive its termination or expiration.

88.     Upon information and belief, since February 28, 2014 and continuing through the present day, Intellectual Ventures Management and the assignees of the patents in the Intellectual Ventures Management Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, have been obligated to continue to perform and satisfy their obligations, whether then existing or subsequently arising, under the February 2014 Contract to First Horizon and its successor-in-interest First Horizon, located in the State of Tennessee.

**b.**   **The Parties Also Executed a May 2014 Contract Whose Terms Survive Termination Or Expiration.**

89.     In May 2014, Intellectual Ventures Management, on its own behalf and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including one or more Defendants, negotiated a second contract with First Horizon, located in the State of Tennessee, in relation to licensing and enforcement of all of the assignees' patents in Intellectual Ventures Management's Patent Portfolio.

90.     Upon information and belief, on May 25, 2014, Intellectual Ventures Management, on its own behalf and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including one or more Defendants, and First Horizon's predecessors-in-interest, First Horizon National Corporation and First Tennessee Bank National Association, located in the State of Tennessee, entered into and executed a contract entitled

21

"Amendment to the Mutual Confidentiality Agreement" which changed the term of the February 2014 Contract to a period of one hundred eighty (180) days and replaced certain wording, but otherwise continued the February 2014 Contract (hereinafter "May 2014 Contract").

91.     Upon information and belief, as agreed to in the February 2014 Contract and continued by the May 2014 Contract, the obligations owed to First Horizon and its successor-in-interest First Horizon, located in the State of Tennessee, survived the expiration or termination of the May 2014 Contract and continue today.

92.     Upon information and belief, the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security are each an "individual, corporation, trust, partnership, joint venture, limited liability company, association, unincorporated organization or other legal entity" that Defendant Intellectual Ventures Management "directly or indirectly Controls, is Controlled by, or is under common Control with" in accordance with the terms of the February 2014 Contract and continued by the May 2014 Contract, including those terms that survive expiration or termination.

93.     Upon information and belief, the May 2014 Contract, including those terms that survive expiration or termination, is a legally binding agreement that created obligations, whether then existing or subsequently arising, to perform and/or not perform specific actions.

94.     Upon information and belief, the May 2014 Contract with First Horizon, located in the State of Tennessee, created obligations, whether then existing or subsequently arising, for Intellectual Ventures Management and the assignees of patents in its Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security to perform and/or not perform specific actions.

95.     Upon information and belief, the obligations created by the May 2014 Contract, whether then existing or subsequently arising, for Intellectual Ventures Management and the assignees of patents in Intellectual Ventures Management's Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, survived the termination or expiration of the May 2014 Contract and continue in force today.

96.     Upon information and belief, since May 25, 2014 and continuing through the present day, Intellectual Ventures Management and the assignees of patents in the Intellectual Ventures Management Patent Portfolio, including, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, have been obligated to continue to perform and/or not perform the specific actions according to the terms which were negotiated, agreed to, and memorialized in the May 2014 Contract and which the parties agreed would survive its termination or expiration.

97.     Upon information and belief, since May 25, 2014 and continuing through the present day, Intellectual Ventures Management and the assignees of the patents in the Intellectual Ventures Management Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, have been obligated to continue to perform and satisfy their obligations, whether then existing or subsequently arising, under the May 2014 Contract to First Horizon and its successor-in-interest First Horizon, located in the State of Tennessee.

c.  **The Parties Also Executed an August 2014 Contract Whose Terms Survive Termination Or Expiration.**

98.     In August 2014, Intellectual Ventures Management, on its own behalf and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including one or more Defendants, negotiated a third contract with First Horizon, located in the State of

Tennessee, in relation to licensing and enforcement of the assignees' patents in Intellectual Ventures Management's Patent Portfolio.

99.    Upon information and belief, on August 24, 2014, Intellectual Ventures Management, on its own behalf and on behalf of all assignees of patents in Intellectual Ventures Management's Patent Portfolio including one or more Defendants, and First Horizon's predecessors-in-interest, First Horizon National Corporation and First Tennessee Bank National Association, located in the State of Tennessee, entered into and executed a contract entitled "Second Amendment to the Mutual Confidentiality Agreement" which changed the term of the February 2014 Contract to a period of two hundred twenty-five (225) days, but otherwise continued the February 2014 Contract (hereinafter "August 2014 Contract").

100.    Upon information and belief, as agreed to in the February 2014 Contract and continued by the August 2014 Contract, the obligations owed to First Horizon and its successor-in-interest First Horizon, located in the State of Tennessee, survived the expiration or termination of the August 2014 Contract and continue today.

101.    Upon information and belief, the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security are each an "individual, corporation, trust, partnership, joint venture, limited liability company, association, unincorporated organization or other legal entity" that Defendant Intellectual Ventures Management "directly or indirectly Controls, is Controlled by, or is under common Control with" in accordance with the terms of the February 2014 Contract and continued by the August 2014 Contract, including those terms that survive expiration or termination.

24

102.    Upon information and belief, the August 2014 Contract, including those terms that survive expiration or termination, is a legally binding agreement that created obligations, whether then existing or subsequently arising, to perform and/or not perform specific actions.

103.    Upon information and belief, the August 2014 Contract with First Horizon, located in the State of Tennessee, created obligations, whether then existing or subsequently arising, for Intellectual Ventures Management and the assignees of patents in its Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security to perform and/or not perform specific actions.

104.    Upon information and belief, the obligations created by the August 2014 Contract, whether then existing or subsequently arising, for Intellectual Ventures Management and the assignees of patents in Intellectual Ventures Management's Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, survived the termination or expiration of the August 2014 Contract and continue in force today.

105.    Upon information and belief, since August 24, 2014 and continuing through the present day, Intellectual Ventures Management and the assignees of patents in the Intellectual Ventures Management Patent Portfolio, including, Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, have been obligated to continue to perform and/or not perform the specific actions according to the terms which were negotiated, agreed to, and memorialized in the August 2014 Contract and which the parties agreed would survive its termination or expiration.

106.    Upon information and belief, since August 24, 2014 and continuing through the present day, Intellectual Ventures Management and the assignees of the patents in the Intellectual Ventures Management Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II,

Callahan Cellular, and OL Security, have been obligated to continue to perform and satisfy their obligations, whether then existing or subsequently arising, under the August 2014 Contract to First Horizon and its successor-in-interest First Horizon, located in the State of Tennessee.

3.  **In 2023, Defendants Increased Their Licensing and Enforcement in Tennessee of the Assignees' Patents in Intellectual Ventures Management's Patent Portfolio.**

107.    Nine (9) years later, Intellectual Ventures Management, by and on behalf of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, has targeted First Horizon in the State of Tennessee, sending threatening emails and letters asserting, *inter alia*, that the assignees' Patents-in-Suit are infringed and are required to be licensed by First Horizon, which resides in the State of Tennessee and the Western District of Tennessee.

108.    On November 17, 2023, Intellectual Ventures Management's Vice President of Licensing Steve Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to First Horizon's Senior Vice President and Assistant General Counsel Desiree Franklin, who resides and is located in the State of Tennessee, in relation to licensing and enforcement of all of the assignees' patents in Intellectual Ventures Management's Patent Portfolio, including Defendants' Patents-in-Suit. A copy of the email is attached as Exhibit 6.

109.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, indicated an intent to "initiate a dialogue concerning intellectual property and licensing matters with First Horizon"

26

residing in the State of Tennessee and to discuss "an overview of IV's expansive patent portfolio and its relevance to First Horizon's operations." Upon information and belief, in this communication, Intellectual Ventures Management conducted business, by and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including on behalf of Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, relating to the licensing and enforcement of the assignees' patents in Intellectual Ventures Management's Patent Portfolio with First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee.

110.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, indicated that the assignees' patents in Intellectual Ventures Management Patent Portfolio "align closely with the technologies integral to First Horizon's daily operations, including cloud computing, networking, security, storage, digital payments, and utilization of open-source software, among others."

111.    On December 20, 2023, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, conducting business relating to the licensing and enforcement of all of the assignees' patents in Intellectual Ventures Management's Patent Portfolio and emphasizing "the criticality of discussing the potential licensing agreement between" Defendants and First Horizon. A copy of this email is attached as Exhibit 7.

112.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, stated that it was "imperative to underscore the significance of obtaining a license" and warned of "inadvertent risks."

113.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, further stated that "[w]ithout a formalized agreement in place, there might be inadvertent risks associated with utilizing technologies covered by IV's patents," and that it is "essential to protect both First Horizon's operations and IV's intellectual property rights through a comprehensive licensing arrangement." Upon information and belief, through this communication, Intellectual Ventures Management conducted business, by and on behalf of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, relating to the licensing and enforcement of all of the assignees' patents in Intellectual Ventures Management's Patent Portfolio with First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee.

114.    On January 7, 2024, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, conducting business in relation to the licensing and enforcement of all of the assignees' patents in Intellectual Ventures Management Patent Portfolio, and further to "stress

28

the urgency of acquiring a license" to the assignees' patents in Intellectual Ventures Management's Patent Portfolio under "fixed fee, non-negotiable financial terms." A copy of this email is attached as Exhibit 8.

115.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, "raised concerns about potential inadvertent risks related to utilizing technologies encompassed by IV's patents" and that it was "critical to mitigate these risks and protect both First Horizon's operations and IV's intellectual property rights through a formalized licensing arrangement."

116.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, further stated that First Horizon's "prompt acknowledgment or response" to the email sent on January 7, 2024, was "crucial." Upon information and belief, in this communication, Intellectual Ventures Management by and on behalf of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to all of the assignees' patents in Intellectual Ventures Management's Patent Portfolio under the veiled threat of enforcement through litigation with the understanding that Intellectual Ventures Management is a non-practicing entity whose business model is to accuse entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those patents, and then for the assignees of those patents subsequently to file suit for

patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

117.    On January 18, 2024, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, conducting business in relation to the licensing and enforcement of the assignees' patents in Intellectual Ventures Management Patent Portfolio and stating that it was "crucial" to receive a response "to avoid any misunderstandings." A copy of this email is attached as Exhibit 9.

118.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, stated that the assignees' patents in Intellectual Ventures Management's Patent Portfolio (which includes Defendants' Patents-in-Suit) "aligns strategically with technologies crucial to First Horizon's operations." Upon information and belief, in this communication, Intellectual Ventures Management, by and on behalf of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to the assignees' patents in Intellectual Ventures Management's Patent Portfolio under the veiled threat of enforcement through litigation with the understanding that Intellectual Ventures Management is a non-practicing entity whose business model is to accuse entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those

patents, and then for the assignees of those patents subsequently to file suit for patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

119.    On February 6, 2024, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, conducting business in relation to the licensing and enforcement of the assignees' patents in patents in Intellectual Ventures Management's Patent Portfolio and further stating that it was "crucial that we at least schedule a 30-minute conversation to address this matter." A copy of this email is attached as Exhibit 10.

120.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, stated that "[e]fficient infringement is not a viable strategy in this circumstance," and that "engaging in discussions is critical to avoiding misunderstandings or unnecessary escalation." Upon information and belief, "efficient infringement" refers to a business practice where a company intentionally infringes on another company's patent because it's cheaper than paying for a license. Upon information and belief, in this communication, Intellectual Ventures Management, by and on behalf of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to the assignees' patents in Intellectual Ventures Management's Patent Portfolio under the veiled threat of enforcement through litigation with the understanding that Intellectual

Ventures Management is a non-practicing entity whose business model is to accuse entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those patents, and then for the assignees of those patents subsequently to file suit for patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

121.    On February 23, 2024, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, conducting business in relation to the licensing and enforcement of the assignees' patents in Intellectual Ventures Management's Patent Portfolio. A copy of this email is attached as Exhibit 11.

122.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio, including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, stated that the goal of the communication was to "engage in good-faith negotiations to explore a mutually beneficial license arrangement." Upon information and belief, in this communication, Intellectual Ventures Management conducted business, by and on behalf of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, relating to the licensing and enforcement of the assignees' patents in Intellectual Ventures Management's Patent Portfolio with First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee.

123.    On March 15, 2024, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, conducting business in relation to the licensing and enforcement of the assignees' patents in Intellectual Ventures Management's Patent Portfolio and stating that they are "committed to ensuring that all organizations, including First Horizon, operate within the bounds of intellectual property law." A copy of this email is attached as Exhibit 12. Upon information and belief, in this communication, Intellectual Ventures Management, by and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to the assignees' patents in Intellectual Ventures Management's Patent Portfolio under the veiled threat of enforcement through litigation with the understanding that Intellectual Ventures Management is a non-practicing entity whose business model is to accuse entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those patents, and then for the assignees of those patents subsequently to file suit for patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

124.    On August 26, 2024, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, conducting business in relation to the licensing and enforcement of the

assignees' patents in Intellectual Ventures Management's Patent Portfolio and stating that "26 financial services companies have secured licenses" and his "role is to ensure that one way or another, First Horizon is also properly licensed." A copy of this email is attached as Exhibit 13. Upon information and belief, in this communication, Intellectual Ventures Management, by and on behalf of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to the assignees' patents in Intellectual Ventures Management's Patent Portfolio under the veiled threat of enforcement through litigation with the understanding that Intellectual Ventures Management is a non-practicing entity whose business model is to accuse entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those patents, and then for the assignees of those patents subsequently to file suit for patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

125.    On September 23, 2024, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent a letter to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, further conducting business in relation to the licensing and enforcement of the assignees' patents in patents in Intellectual Ventures Management's Patent Portfolio. A copy of the letter is attached as Exhibit 14.

126.    In this letter, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, alleged that

34

Plaintiff's use of "Kubernetes" infringed claim 30 of the '785 Patent, Plaintiff's use of "Docker" infringed claim 7 of the '844 Patent, Plaintiff's use of "Kafka" infringed claim 14 of the '722 Patent, Plaintiff's use of "Secure Payment Processing" infringed claim 18 of the '391 Patent, and Plaintiff's use of "Point-of-Sale Systems" infringed claim 1 of the '862 Patent. Upon information and belief, in this threatening communication, Intellectual Ventures Management, on its own behalf and by and on behalf of Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security who are each assignees of patents in Intellectual Ventures Management's Patent Portfolio, alleged that the identified patents, which are the Patent-in-Suit, "cover technologies used in at least the example products, platforms, features, and/or services listed in the table below that First Horizon makes, uses, sells, offers for sale, imports, and/or encourages its customers and partners to make, use, sell, offer to sell and/or import," and thereby asserted both direct and indirect infringement of those patents by First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee.

127.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, further stated that "these patents are offered as an initial list of example patents and example infringing products and that IV's investigation of First Horizon products and services is ongoing."

128.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, further stated that "IV does not authorize First Horizon or First Horizon's customers or partners to practice any of the above patents and/or other IV patent rights without a license." Upon information and belief, in this

35

communication, Intellectual Ventures Management, on its own behalf and by and on behalf of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to the assignees' patents in Intellectual Ventures Management's Patent Portfolio under the veiled threat of enforcement through litigation with the understanding that Intellectual Ventures Management is a non-practicing entity whose business model is to accuse entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those patents, and then for the assignees of those patents subsequently to file suit for patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

129.    On October 8, 2024, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, conducting business in relation to the licensing and enforcement of the assignees' patents in Intellectual Ventures Management's Patent Portfolio and stating that First Horizon "is required to obtain a license for its operations." A copy of this email is attached as Exhibit 15.

130.    In this threatening correspondence, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered specific terms for First Horizon to license the assignees' patents in

36

Intellectual Ventures Management's Patent Portfolio including Defendants' Patents-in-Suit, namely a "one-time license fee for a worldwide license to the IV patent portfolio is $3.25 million."

131.    Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, also attached to his October 8, 2024 correspondence a document titled "Invention Investment Fund (IIF) Commercial Bank Licensing," which states the intent is "to enforce its patent rights, with patent litigations pending against JPMC, Liberty Mutual, and Comerica, with further actions planned." A copy of this document is included in Exhibit 15.

132.    The "Invention Investment Fund (IIF) Commercial Bank Licensing" of Exhibit 15 further states that Intellectual Ventures Management, upon information and belief on its own behalf and by and on behalf of the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, "is offering licenses to all financial services and insurance companies with business operations in the United States" and that they "will also consider offers to license (or purchase) selected patents from its portfolio." Upon information and belief, in this communication, Intellectual Ventures Management, on its own behalf and by and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to the assignees' patents in Intellectual Ventures Management's Patent Portfolio, including Defendants' Patents-in-Suit, under the veiled threat of enforcement through litigation with the understanding that Intellectual Ventures Management is a non-practicing entity whose business model is to accuse

entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those patents, and then for the assignees of those patents subsequently to file suit for patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

133.    On December 11, 2024, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, further conducting business in relation to the licensing and enforcement of the assignees' patents in patents in Intellectual Ventures Management's Patent Portfolio, claiming to be "following up regarding the notice sent to First Horizon Corp. on September 23, 2024, and the pricing expectations shared on October 8, 2024." A copy of this email is attached as Exhibit 16.

134.    In this correspondence, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, stated that the communication served "to document Intellectual Ventures' ongoing efforts to fulfill its legal obligations" and to "avoid claims of unreasonable delay (laches) or misleading conduct (equitable estoppel), which could limit available remedies." Upon information and belief, in this communication, Intellectual Ventures Management, on its own behalf and by and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to the assignees' patents in Intellectual Ventures Management's Patent

38

Portfolio, including Defendants' Patents-in-Suit, under the veiled threat of enforcement through litigation with the understanding that Intellectual Ventures Management is a non-practicing entity whose business model is to accuse entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those patents, and then for the assignees of those patents subsequently to file suit for patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

135.    On February 6, 2025, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, further conducting business in relation to the licensing and enforcement of the assignees' patents in patents in Intellectual Ventures Management's Patent Portfolio. A copy of this email is attached as Exhibit 17.

136.    In this correspondence, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, stated that "IV has recently settled its financial services litigations with Liberty Mutual and Comerica, further demonstrating the strength and enforceability of our patents." Further, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, stated a substantive response was required "[t]o avoid unnecessary escalation." Upon information and belief, in this communication, Intellectual Ventures Management, on its own behalf and by and on behalf of all assignees of the patents in

Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to the assignees' patents in Intellectual Ventures Management's Patent Portfolio, including Defendants' Patents-in-Suit, under the veiled threat of enforcement through litigation with the understanding that Intellectual Ventures Management is a non-practicing entity whose business model is to accuse entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those patents, and then for the assignees of those patents subsequently to file suit for patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

137.    On April 3, 2025, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, further conducting business in relation to the licensing and enforcement of the assignees' patents in patents in Intellectual Ventures Management's Patent Portfolio. A copy of this email is attached as Exhibit 18.

138.    In this correspondence, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, stated that "IV filed two new patent litigations–against Nationwide Mutual Insurance and The Bank of New York Mellon–following their decision not to engage in licensing discussions," and further that they "anticipate additional enforcement actions in the coming months with institutions that continue to decline meaningful negotiations." Upon information and belief, in this

communication, Intellectual Ventures Management, on its own behalf and by and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to the assignees' patents in Intellectual Ventures Management's Patent Portfolio, including Defendants' Patents-in-Suit, under the veiled threat of enforcement through litigation with the understanding that Intellectual Ventures Management is a non-practicing entity whose business model is to accuse entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those patents, and then for the assignees of those patents subsequently to file suit for patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

139.    On April 25, 2025, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, sent an email to First Horizon, addressed to Ms. Franklin, who resides and is located in the State of Tennessee, further conducting business in relation to the licensing and enforcement of the assignees' patents in patents in Intellectual Ventures Management's Patent Portfolio in an attempt to "underscore[] the strength and enforceability of the Intellectual Ventures (IV) patent portfolio." A copy of this email is attached as Exhibit 19.

140.    In this correspondence, Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, stated that "the Patent Trial and Appeal Board (PTAB) officially terminated three inter

partes review (IPR) proceedings" for the '722 Patent, the '785 Patent, and the '844 Patent. Mr. Joroff, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, stated that "these outcomes send a clear message: the IV portfolio not only survives challenge but continues to demonstrate its legal and commercial strength in both licensing and litigation contexts." Upon information and belief, in this communication, Intellectual Ventures Management, on its own behalf and by and on behalf of all assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, offered to First Horizon, a company residing in the State of Tennessee and the Western District of Tennessee, a license to the assignees' patents in Intellectual Ventures Management's Patent Portfolio, including Defendants' Patents-in-Suit, under the veiled threat of enforcement through litigation with the understanding that Intellectual Ventures Management is a non-practicing entity whose business model is to accuse entities of infringing the patents in its Patent Portfolio by and on behalf of the assignees of those patents, and then for the assignees of those patents subsequently to file suit for patent infringement for their collective benefit if an accused entity refuses to pay the license fee demanded.

141.    On October 16, 2025, Kasowitz LLP, on behalf of Defendants, sent a letter to Plaintiff, addressed to Ms. Franklin in the State of Tennessee, a copy of which is attached as Exhibit 20.

142.    In this letter, Jonathan K. Waldrop of Kasowitz LLP, on behalf of Defendants, continue to allege that Plaintiff's "products, platforms, features, and/or services" infringe Defendant's rights in the portfolio of patents Defendants owns or has the exclusive right to license.

*Id.* As further examples of the broad infringement allegations spanning across its portfolio of patents that Defendant has asserted against Plaintiff over the course of the parties' communications, Mr. Waldrop, on behalf of Defendants, identifies "an additional set of sample IIF patents, which cover technologies used in at least the example products, platforms, features, and/or services listed in the table below that First Horizon makes, uses, sells, offers for sale, imports, and/or encourages its customers and partners to make, use, sell, offer to sell and/or import," namely alleging Plaintiff's use of Kubernetes also infringes U.S. Patent No. 8,352,584, Plaintiff's use of Kaftka also infringes U.S. Patent No. RE48,894, and Plaintiff's use of Hadoop also infringes U.S. Patent No. 9,678,967. *Id.* In that letter, Mr. Waldrop, on behalf of Defendants, clearly states "Please note that these patents are offered as a list of example patents and example infringing products and that IV's investigation of First Horizon products and services is ongoing." *Id.*

## V. <u>THE CONTROVERSY</u>

143.    There is an actual controversy within the jurisdiction of this Court under 28 U.S.C. § 2201 and § 2202.

144.    Intellectual Ventures Management, by and on behalf of Intellectual Ventures Management and the assignees of the patents in Intellectual Ventures Management's Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, have accused First Horizon of infringing the Patents-in-Suit and indicated the intention to take the steps necessary to protect their intellectual property rights, as set forth in the paragraphs above, including by stating on their behalf that it "seeks to enforce its patents" and identified three ongoing patent infringement lawsuits filed against JP Morgan Chase & Co. ("JP Morgan"), Comerica Inc. ("Comerica"), and Liberty Mutual Holding Company Inc., *et al*., ("Liberty Mutual

*et al.*") filed in the name of one or more Defendants for their collective benefit as examples and evidence of how Defendants protect and enforce the assignees' patents in Intellectual Ventures Management's Patent Portfolio, while threatening First Horizon that there are additional "Industry-Related Litigations" planned against accused infringers who do not pay to license the assignees' patents in the Patent Portfolio. *See* Exhibit 15.

145.    As discussed below, First Horizon does not infringe and has not infringed the Patents-in-Suit.

146.    Defendants' actions have created an actual, justiciable, substantial, and immediate controversy between First Horizon and Defendants as to whether First Horizon infringes the Patents-in-Suit.

147.    Defendants' actions include the transmission of threatening emails and letters by representatives of Intellectual Ventures Management, by and on behalf of all Defendants, stating First Horizon is purportedly required to license the Patents-in-Suit, alleging that First Horizon infringes each of the Patents-in-Suit, and representing that litigation will be used to attack accused infringers who do not pay to license the patents in Intellectual Ventures Management's Patent Portfolio. *See, e.g.,* Exhibit 15.

148.    The assignees of the patents in Intellectual Ventures Management's Patent Portfolio have a history of aggressive litigation against other parties similarly situated to First Horizon when those other parties have refused to pay to license the patents in Intellectual Ventures Management's Patent Portfolio.

149.    For example, after Intellectual Ventures Management accused JP Morgan of practicing the patents in Intellectual Ventures Management's Patent Portfolio and JP Morgan refused to pay to license those patents, Defendants Intellectual Ventures I and Intellectual Ventures II filed suit against JP Morgan in the U.S. District Court for the Eastern District of Texas Marshall Division on November 15, 2023, and alleged that JP Morgan's use of Docker, Kafka, Trino and/or Presto, Apache Spark, a mobile banking application with the Zelle payment features, and Kubernetes infringed six patents, including the '844 Patent, the '722 Patent, and the '785 Patent which Defendants also now accuse First Horizon of infringing. *See Intellectual Ventures I LLC, and Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 2:23-cv-00523-JRG (E.D. Tex. filed Nov. 15, 2023), ECF No. 1.

150.    As another example, after Intellectual Ventures Management accused Comerica of practicing the patents in Intellectual Ventures Management's Patent Portfolio and Comerica refused to pay to license those patents, Defendants Intellectual Ventures I and Intellectual Ventures II filed suit in the U.S. District Court for the Eastern District of Texas Marshall Division on November 15, 2023, and alleged that Comerica's use of Docker, Kafka, Apache Spark, and Kubernetes infringed four patents, including the '844 Patent, the '722 Patent, and the '785 Patent which Defendants also now accuse First Horizon of infringing. *See Intellectual Ventures I LLC, and Intellectual Ventures II LLC v. Comerica Inc.*, No. 2:23-cv-00524-JRG (E.D. Tex. filed Nov. 15, 2023), ECF No. 1.

151.    As another example, after Intellectual Ventures Management accused Liberty Mutual *et al.* of practicing the patents in Intellectual Ventures Management's Patent Portfolio and Liberty Mutual *et al.* refused to pay to license those patents, Defendants Intellectual Ventures I and Intellectual Ventures II filed suit in the U.S. District Court for the Eastern District of Texas

Marshall Division on November 15, 2023, and alleged that Liberty Mutual *et al.*'s use of Docker, Kafka, Spark, and Kubernetes infringed four patents, including the '844 Patent, the '722 Patent, and the '785 Patent which Defendants also now accuse First Horizon of infringing. *See Intellectual Ventures I LLC, and Intellectual Ventures II LLC v. Liberty Mut. Holding Co. Inc., et al.*, No. 2:23-cv-00525-JRG (E.D. Tex. filed Nov. 15, 2023), ECF No. 1.

152.    Defendants have established a pattern of practice wherein Intellectual Ventures Management, on its own behalf and by and on behalf of entities it manages and/or who are under common ownership and/or control and/or for which it is the agent and/or legal representative, including the assignees of patents in Intellectual Ventures Management's Patent Portfolio such as Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, accuses an entity of practicing the assignees' patents in its portfolio, Intellectual Ventures Management offers to license the assignees' patents to the allegedly infringing party, and, if the allegedly infringing party does not pay the license fee demanded, then the assignees of those patents file suit for patent infringement against that party in the U.S. District Court in Texas for their collective benefit.

153.    For example, Intellectual Ventures Management, on its own behalf and by and on behalf of entities it manages and/or who are under common ownership and/or control and/or for which it is the agent and/or legal representative, including the assignees of patents in Intellectual Ventures Management's Patent Portfolio, sent the letter that is Exhibit 5 to their complaint the day before Intellectual Ventures I and Intellectual Ventures II filed suit for patent infringement against Comerica for their collective benefit. *See Intellectual Ventures I LLC, and Intellectual Ventures II LLC v. Comerica Inc.*, No. 2:23-cv-00524-JRG (E.D. Tex. filed Nov. 15, 2023), ECF No. 1, Ex. 5. That letter, signed by their attorney, emphasized that the entities do "not authorize Comerica or Comerica's customers or partners to practice any of these patents without a license." *Id.* Further,

the letter stated that the entities were "willing to offer a patent license to Comerica and remain[ed] open to business discussions with Comerica to negotiate such a license, either to the specifically referenced patents, or to all or a subset of the IV patent rights." *Id.*

154.    Substantively identical letters signed by the same attorney were sent to JP Morgan and to Liberty Mutual *et al.* before Intellectual Ventures I and Intellectual Ventures II also filed complaints for patent infringement against each of them, and those letters were then also included as exhibits to their respective complaints. *See Intellectual Ventures I LLC, and Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 2:23-cv-00523-JRG (E.D. Tex. filed Nov. 15, 2023), ECF No. 1, Ex. 7; *See Intellectual Ventures I LLC, and Intellectual Ventures II LLC v. Liberty Mut. Holding Co. Inc., et al.*, No. 2:23-cv-00525-JRG (E.D. Tex. filed Nov. 15, 2023), ECF No. 1, Ex. 5.

155.    Upon information and belief, before each of those letters were received, JP Morgan, Comerica, and Liberty Mutual *et al.* each received similar correspondence from Intellectual Ventures Management, on its own behalf and by and on behalf of entities it manages and/or who are under common ownership and/or control and/or for which it is the agent and/or legal representative, including the assignees of patents in Intellectual Ventures Management's Patent Portfolio, attempting to license the patents in its Patent Portfolio under threat of litigation as First Horizon has also received.

156.    Taken together, a pattern has been demonstrated wherein entities that Intellectual Ventures Management manages and/or who are under common ownership and/or control and/or for which it is the agent and/or legal representative, including the assignees of patents in Intellectual Ventures Management's Patent Portfolio, file suit for patent infringement against

companies who refuse to pay to license the assignees' patents in Intellectual Ventures Management's Patent Portfolio and a *modus operandi* in which Intellectual Ventures Management, by and on behalf of itself and those entities, sends substantially identical and successive correspondence preceding the filing of a complaint for patent infringement against accused infringers who refuse to pay.  Intellectual Ventures Management, on its own behalf and by and on behalf of entities it manages and/or who are under common ownership and/or control and/or for which it is the agent and/or legal representative, including the assignees of patents in Intellectual Ventures Management's Patent Portfolio, has sent First Horizon substantially identical and successive correspondence that it sent to other defendants before a complaint for patent infringement was filed against those defendants.

157.    Therefore, there is an actual, justiciable, substantial, and immediate controversy as between First Horizon and Defendants regarding whether First Horizon infringes the Patents-in-Suit.  This conclusion is further supported by Intellectual Ventures Management's actions, on behalf of Defendants, that include (1) alleging that there were certain risks related to utilizing technologies encompassed by the patents in the Intellectual Ventures Management Patent Portfolio and it was "critical to mitigate these risks and protect both First Horizon's operations and IV's intellectual property rights through a formalized licensing arrangement"; (2) identifying technology attributed to First Horizon that allegedly infringes patents assigned to Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL Security, in the letter sent on September 23, 2024, by Mr. Joroff, on behalf of Defendants, to First Horizon; and (3) a historically aggressive litigation strategy, viewed in conjunction with the statements from Mr. Joroff where Intellectual Ventures Management, by and on behalf of the assignees of the patents in its Patent Portfolio including Intellectual Ventures I, Intellectual Ventures II, Callahan Cellular, and OL

Security, have targeted First Horizon just as Liberty Mutual *et al*., Comerica, and JP Morgan were first targeted and then sued.

158.    The facts show a substantial controversy between parties with adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment. Accordingly, this Court has declaratory judgment jurisdiction to hear this case.

## VI. <u>CAUSES OF ACTION</u>

**COUNT I**
**<u>DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '785 PATENT</u>**

159.    First Horizon incorporates and realleges the foregoing paragraphs as if fully set forth herein.

160.    Intellectual Ventures Management, by and on behalf of all Defendants, has indicated that, absent a license, they intend to enforce their intellectual property rights against First Horizon. Intellectual Ventures Management, by and on behalf of all Defendants, has alleged that "Intellectual Ventures (IV) holds numerous patents covering various technologies that First Horizon is using, and therefore, they need to be licensed to IV's patent portfolio." *See, e.g.,* Exhibit 12.    Intellectual Ventures Management, by and on behalf all of Defendants, has stated unequivocally that "First Horizon Corp. is required to obtain a license for its operations" of at least the five Patents-In-Suit, including the '785 Patent.  *See, e.g.,* Exhibit 15.  Intellectual Ventures Management, by and on behalf of all Defendants, has also confirmed that "IV does not authorize First Horizon or First Horizon's customers or partners to practice any of the above patents and/or other IV patent rights without a license." *See, e.g.,* Exhibit 14. Intellectual Ventures Management, by and on behalf of all Defendants, has accused First Horizon of "Efficient infringement." *See,*

*e.g.,* Exhibits 10, 12.  Upon information and belief, "efficient infringement" refers to a business practice where a company intentionally infringes on another company's patent because it's cheaper than paying for a license.  Intellectual Ventures Management, on behalf of all Defendants, has threatened "escalation" if First Horizon does not license the patents in the Intellectual Ventures Management Patent Portfolio, including the '785 Patent, and identified patent litigation cases filed by entities under common ownership or control as Intellectual Ventures Management and/or entities to which Intellectual Ventures Management is the agent and/or legal representative as threatening examples.  *See, e.g.,* Exhibit 10.

161.    In his September 23, 2024 letter, Steve Joroff on behalf of Defendants alleged that "First Horizon's use of Kubernetes," a third party branded software, is an example of First Horizon's "infringing products" and specified that that "First Horizon's use of Kubernetes" provided by a third party infringe at least claim 30 of the '785 Patent (the "'785 Accused System").  *See* Exhibit 14.

162.    First Horizon does not make, use, offer to sell, or sell any product and/or system within the United States (including but not limited to the '785 Accused System), or import into the United States any product and/or system (including but not limited to the '785 Accused System) in a manner which infringes the '785 Patent.

163.    By way of an example, each independent claim of the '785 Patent requires, *inter alia*, that a device is registered in a virtual network.  *See* U.S. Pat. No. 7,949,785 to Alkhatib *et al.* at Claim 1 ("the virtual network manager configured to register devices in a virtual network"); Claim 30 ("a memory and a processor to implement a register module configured to register devices in a virtual network"); Claim 38 ("a first device that is registered as a member in the virtual

network"); Claim 48 ("distributing a virtual network address to a device to register the device as a member of the virtual network"); Claim 62 ("distribute a virtual network address to a device to register the device as a member in the virtual network"); Claim 75 ("a user set of one or more devices that are registered in the virtual network").

164.    First Horizon does not infringe the '785 Patent (including, for example, the independent claims identified in the preceding paragraph) at least because the '785 Accused System does not register devices in a virtual network.

165.    The "kubernetes.io" website includes the following "overview" of the '785 Accused System. *See* https://kubernetes.io/docs/concepts/overview/#why-you-need-kubernetes-and-what-can-it-do (last accessed Oct. 4, 2024).

## Overview

Kubernetes is a portable, extensible, open source platform for managing containerized workloads and services, that facilitates both declarative configuration and automation. It has a large, rapidly growing ecosystem. Kubernetes services, support, and tools are widely available.

Let's take a look at why Kubernetes is so useful by going back in time.



**Traditional Deployment**          **Virtualized Deployment**          **Container Deployment**

**Traditional deployment era:**

Early on, organizations ran applications on physical servers. There was no way to define resource boundaries for applications in a physical server, and this caused resource allocation issues. For example, if multiple applications run on a physical server, there can be instances where one application would take up most of the resources, and as a result, the other applications would underperform. A solution for this would be to run each application on a different physical server. But this did not scale as resources were underutilized, and it was expensive for organizations to maintain many physical servers.

**Virtualized deployment era:**

As a solution, virtualization was introduced. It allows you to run multiple Virtual Machines (VMs) on a single physical server's CPU. Virtualization allows applications to be isolated between VMs and provides a level of security as the information of one application cannot be freely accessed by another application.

Virtualization allows better utilization of resources in a physical server and allows better scalability because an application can be added or updated easily, reduces hardware costs, and much more. With virtualization you can present a set of physical resources as a cluster of disposable virtual machines.

Each VM is a full machine running all the components, including its own operating system, on top of the virtualized hardware.

**Container deployment era:**

Containers are similar to VMs, but they have relaxed isolation properties to share the Operating System (OS) among the applications. Therefore, containers are considered lightweight. Similar to a VM, a container has its own filesystem, share of CPU, memory, process space, and more. As they are decoupled from the underlying infrastructure, they are portable across clouds and OS distributions.

166.    The "kubernetes.io" website provides that the '785 Accused System is an "open source platform for managing containerized workloads and services" wherein the containers are "decoupled from the underlying infrastructure" and "are portable across clouds and OS distributions." *See* https://kubernetes.io/docs/concepts/overview/#why-you-need-kubernetes-and-what-can-it-do (last accessed Oct. 4, 2024).

167.    The "kubernetes.io" website provides the following description of Kubernetes "Cluster Architecture" which make up the '785 Accused System. *See* https://kubernetes.io/docs/concepts/architecture/ (last accessed Oct. 4, 2024).

> The architectural concepts behind Kubernetes.
>
> A Kubernetes cluster consists of a control plane plus a set of worker machines, called nodes, that run containerized applications. Every cluster needs at least one worker node in order to run Pods.
>
> The worker node(s) host the Pods that are the components of the application workload. The control plane manages the worker nodes and the Pods in the cluster. In production environments, the control plane usually runs across multiple computers and a cluster usually runs multiple nodes, providing fault-tolerance and high availability.

168.    The "kubernetes.io" website provides the following description of "Pods" which, as provided above, make up the '785 Accused System. *See* https://kubernetes.io/docs/concepts/workloads/pods/ (last accessed Oct. 4, 2024).

## Pods

*Pods* are the smallest deployable units of computing that you can create and manage in Kubernetes.

A *Pod* (as in a pod of whales or pea pod) is a group of one or more containers, with shared storage and network resources, and a specification for how to run the containers. A Pod's contents are always co-located and co-scheduled, and run in a shared context. A Pod models an application-specific "logical host": it contains one or more application containers which are relatively tightly coupled. In non-cloud contexts, applications executed on the same physical or virtual machine are analogous to cloud applications executed on the same logical host.

As well as application containers, a Pod can contain init containers that run during Pod startup. You can also inject ephemeral containers for debugging a running Pod.

169.    The "kubernetes.io" website provides the following description of "DNS for Services and Pods" which, as provided above, make up  the '785 Accused System. *See* https://kubernetes.io/docs/concepts/services-networking/dns-pod-service/ (last accessed Oct. 4, 2024).

## DNS for Services and Pods

Your workload can discover Services within your cluster using DNS; this page explains how that works.

Kubernetes creates DNS records for Services and Pods. You can contact Services with consistent DNS names instead of IP addresses.

Kubernetes publishes information about Pods and Services which is used to program DNS. Kubelet configures Pods' DNS so that running containers can lookup Services by name rather than IP.

Services defined in the cluster are assigned DNS names. By default, a client Pod's DNS search list includes the Pod's own namespace and the cluster's default domain.

170.    The "kubernetes.io" website provides that, to the extent that the '785 Accused System is configured to register anything in a virtual network, it is configured to register Pods in a virtual network.

171.    Based at least in part on this representation, a Pod is not a "device" as claimed in each independent claim of the '785 Patent.

172.    Accordingly, First Horizon does not infringe the '785 Patent at least because the '785 Accused System does not register devices in a virtual network.

173.    Accordingly, First Horizon does not directly infringe the '785 Patent, either literally or under the doctrine of equivalents.

174.    Furthermore, at least because there is no direct infringement, there is also no indirect infringement, and First Horizon does not induce infringement of the '785 Patent or otherwise contribute to infringement of the '785 Patent.

175.    Therefore, an actual, justiciable, substantial, and immediate controversy exists between First Horizon and Defendants as to whether First Horizon has infringed and/or is infringing the '785 Patent.

176.    The controversy between the parties is sufficient to entitle First Horizon to a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 that First Horizon (including but not limited to through its use of the '785 Accused System) has not infringed and does not infringe the '785 Patent.

**COUNT II**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '844 PATENT**

177.     First Horizon incorporates and realleges the foregoing paragraphs as if fully set forth herein.

178.     Intellectual Ventures Management, by and on behalf of all Defendants, has indicated that, absent a license, they intend to enforce their intellectual property rights against First Horizon.  Intellectual Ventures Management, by and on behalf of all Defendants, has alleged that "Intellectual Ventures (IV) holds numerous patents covering various technologies that First Horizon is using, and therefore, they need to be licensed to IV's patent portfolio." *See, e.g.,* Exhibit 12.   Intellectual Ventures Management, by and on behalf of all Defendants, has stated unequivocally that "First Horizon Corp. is required to obtain a license for its operations" of at least the five Patents-In-Suit, including the '844 Patent.  *See, e.g.,* Exhibit 15.  Intellectual Ventures Management, by and on behalf of all Defendants, has also confirmed that "IV does not authorize First Horizon or First Horizon's customers or partners to practice any of the above patents and/or other IV patent rights without a license." *See, e.g.,* Exhibit 14.  Intellectual Ventures Management, by and on behalf of all Defendants, has accused First Horizon of "Efficient infringement." *See, e.g.,* Exhibits 10, 12.  Upon information and belief, "efficient infringement" refers to a business practice where a company intentionally infringes on another company's patent because it's cheaper than paying for a license.  Intellectual Ventures Management, by and on behalf of all Defendants, has threatened "escalation" if First Horizon does not license the patents in the Intellectual Ventures Management Patent Portfolio, including the '844 Patent, and identified patent litigation cases filed by entities under common ownership or control as Intellectual Ventures Management and/or entities to which Intellectual Ventures Management is the agent and/or legal representative as threatening examples.  *See, e.g.,* Exhibit 10.

179.    In his September 23, 2024 letter, Steve Joroff by and on behalf of all Defendants alleged that "First Horizon's use of Docker," a third party branded software, is an example of First Horizon's "infringing products" and specified that that "First Horizon's use of Docker" provided by a third party infringe at least claim 7 of the '844 Patent (the "'844 Accused System").  *See* Exhibit 14.

180.    First Horizon does not make, use, offer to sell, or sell any product and/or system within the United States (including but not limited to the '844 Accused System), or import into the United States any product and/or system (including but not limited to the '844 Accused System) in a manner which infringes the '844 Patent.

181.    By way of an example, each independent claim of the '844 Patent requires, *inter alia*, that the claimed "leaf image" contain "only additional data blocks not previously contained in said root image and changes made … to the blocks of said root image." *See*  U.S. Pat. No. to Kulkarni *et al.* at Claim 1 ("a plurality of second storage units configured to store leaf images of respective compute nodes, said leaf images including only additional data blocks not previously contained in said root image and changes made by respective compute nodes to the blocks of said root image"); Claim 7 ("said leaf images including only additional data blocks not previously contained in said root image and changes made by respective compute nodes to the blocks of the root image"); Claim 14 ("a plurality of second storage units configured to store leaf images of respective compute nodes, said leaf images comprising only additional data blocks not previously contained in said root image and changes made by respective compute nodes to the blocks of said root image"); Claim 19 ("said leaf images including only additional data blocks not previously contained in said root image and changes made by respective compute nodes to the blocks of the root image"); Claim 23 ("said leaf image portion comprising only additional data blocks not

57

previously contained in said root image portion and, changes made by said first compute node to the blocks of said room image, wherein said leaf image portion does not include blocks of said root image that are unchanged by said first compute node").

182.    First Horizon does not infringe the '844 Patent at least because the '844 Accused System does not include leaf images as claimed.

183.    The "Docker" website provides that the '844 Accused System includes an architecture with (1) "images" which are "read-only template[s] with instructions for creating a Docker container" and (2) "containers" which are "runnable instance[s] of an image" where each container "is defined by its image." *See* https://docs.docker.com/get-started/docker-overview/ (last accessed Oct. 4, 2024).

---

### Images

An image is a read-only template with instructions for creating a Docker container. Often, an image is based on another image, with some additional customization. For example, you may build an image which is based on the `ubuntu` image, but installs the Apache web server and your application, as well as the configuration details needed to make your application run.

You might create your own images or you might only use those created by others and published in a registry. To build your own image, you create a Dockerfile with a simple syntax for defining the steps needed to create the image and run it. Each instruction in a Dockerfile creates a layer in the image. When you change the Dockerfile and rebuild the image, only those layers which have changed are rebuilt. This is part of what makes images so lightweight, small, and fast, when compared to other virtualization technologies.

### Containers

A container is a runnable instance of an image. You can create, start, stop, move, or delete a container using the Docker API or CLI. You can connect a container to one or more networks, attach storage to it, or even create a new image based on its current state.

By default, a container is relatively well isolated from other containers and its host machine. You can control how isolated a container's network, storage, or other underlying subsystems are from other containers or from the host machine.

A container is defined by its image as well as any configuration options you provide to it when you create or start it. When a container is removed, any changes to its state that aren't stored in persistent storage disappear.

---

184.    The "Docker" website provides that "[t]he major difference between a container and an image is the top writable layer." *See* https://docs.docker.com/engine/storage/drivers/ (last accessed Oct. 4, 2024).

## Container and layers

The major difference between a container and an image is the top writable layer. All writes to the container that add new or modify existing data are stored in this writable layer. When the container is deleted, the writable layer is also deleted. The underlying image remains unchanged.

185.    Upon information and belief, a "container" of the '844 Accused System includes both (1) image layers and (2) a container layer, as depicted below. *See* https://docs.docker.com/engine/storage/drivers/ (last accessed Oct. 4, 2024).



186.    In light of this representation, and on information and belief, a container of the '844 Accused System does not include "only additional data blocks not previously contained in said

59

root image and changes made … to the blocks of said root image" as recited by each independent claim of the '844 Patent.

187.    The '844 Accused System does not include a "leaf image[s]" as claimed by the independent claims of the '844 Patent.

188.    Accordingly, First Horizon does not directly infringe the '844 Patent, either literally or under the doctrine of equivalents.

189.    Furthermore, at least because there is no direct infringement, there is also no indirect infringement, and First Horizon does not induce infringement of the '844 Patent or otherwise contribute to infringement of the '844 Patent.

190.    Therefore, an actual, justiciable, substantial, and immediate controversy exists between First Horizon and Defendants as to whether First Horizon has infringed, or is infringing, the '844 Patent.

191.    The controversy between the parties is sufficient to entitle First Horizon to a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 that First Horizon (including but not limited to through its use of the '844 Accused System) has not infringed and does not infringe any claim of the '844 Patent.

## COUNT III
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '722 PATENT

192.    First Horizon incorporates and realleges the foregoing paragraphs as if fully set forth herein.

193.     Intellectual Ventures Management, by and on behalf of all Defendants, has indicated that, absent a license, they intend to enforce their intellectual property rights against First Horizon. Intellectual Ventures Management, by and on behalf of all Defendants, has alleged that "Intellectual Ventures (IV) holds numerous patents covering various technologies that First Horizon is using, and therefore, they need to be licensed to IV's patent portfolio." *See, e.g.,* Exhibit 12.     Intellectual Ventures Management, by and on behalf of all Defendants, has stated unequivocally that "First Horizon Corp. is required to obtain a license for its operations" of at least the five Patents-In-Suit, including the '722 Patent.  *See, e.g.,* Exhibit 15.  Intellectual Ventures Management, by and on behalf of all Defendants, has also confirmed that "IV does not authorize First Horizon or First Horizon's customers or partners to practice any of the above patents and/or other IV patent rights without a license." *See, e.g.,* Exhibit 14.  Intellectual Ventures Management, on behalf of Defendants, has accused First Horizon of "Efficient infringement." *See, e.g.,* Exhibits 10, 12.  Upon information and belief, "efficient infringement" refers to a business practice where a company intentionally infringes on another company's patent because it's cheaper than paying for a license.  Intellectual Ventures Management, by and on behalf of all Defendants, has threatened "escalation" if First Horizon does not license the patents in the Intellectual Ventures Management Patent Portfolio, including the '722 Patent, and identified patent litigation cases filed by entities under common ownership or control as Intellectual Ventures Management and/or entities to which Intellectual Ventures Management is the agent and/or legal representative as threatening examples.  *See, e.g.,* Exhibit 10.

194.     In his September 23, 2024 letter, Steve Joroff on behalf of Defendants alleged that "First Horizon's use of Kafka," a third party branded software, is an example of First Horizon's

"infringing products" and specified that "First Horizon's use of Kafka" provided by a third party infringes at least claim 14 of the '722 Patent (the "'722 Accused System"). *See* Exhibit 14.

195. First Horizon does not make, use, offer to sell, or sell any product and/or system within the United States (including but not limited to the '722 Accused System) or import into the United States any product and/or system (including but not limited to the '722 Accused System) in a manner which infringes the '722 Patent.

196. By way of example, independent claim 14 of the '722 Patent requires, *inter alia*, that the claimed method provide "a data representation to a client device, … wherein the data representation includes at least one live object recognizable by the client device." *See* U.S. Pat. No. 8,407,722 to Tuttle *et al.* at Claim 14.

197. The '722 Patent states that the "live objects" are "designated to be real-time dynamically-updateable objects." *See* Tuttle at col. 5, ll. 27–31.

198. First Horizon does not infringe the '722 Patent at least because the '722 Accused System does not include a data representation to a client device that includes at least one live object recognizable by the client device.

199. Upon information and belief, and based on the representations made on the "Kafka" website, the '722 Accused System sends data in the form of "events" or "records," not "real-time dynamically-updateable objects" as required by the '722 Patent. *See* https://kafka.apache.org/documentation/#majordesignelements (last accessed Oct. 4, 2024).

200. Accordingly, First Horizon does not directly infringe the '722 Patent, either literally or under the doctrine of equivalents.

201.    Furthermore, at least because there is no direct infringement, there is also no indirect infringement, and First Horizon does not induce infringement of the '722 Patent or otherwise contribute to infringement of the '722 Patent.

202.    An actual, justiciable, substantial, and immediate controversy exists between First Horizon and Defendants as to whether First Horizon has infringed and/or is infringing the '785 Patent.

203.    The controversy between the parties is sufficient to entitle First Horizon to a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 that First Horizon (including but not limited to through its use of the '722 Accused System) has not infringed and does not infringe the '722 Patent.

## COUNT IV
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '391 PATENT

204.    First Horizon incorporates and realleges the foregoing paragraphs as if fully set forth herein.

205.    Intellectual Ventures Management, by and on behalf of all Defendants, has indicated that, absent a license, they intend to enforce their intellectual property rights against First Horizon. Intellectual Ventures Management, by and on behalf of Defendants, have alleged that "Intellectual Ventures (IV) holds numerous patents covering various technologies that First Horizon is using, and therefore, they need to be licensed to IV's patent portfolio." *See, e.g.,* Exhibit 12. Intellectual Ventures Management, by and on behalf of all Defendants, has stated unequivocally that "First Horizon Corp. is required to obtain a license for its operations" of at least the five Patents-In-Suit, including the '391 Patent. *See, e.g.,* Exhibit 15.   Intellectual Ventures

Management, by and on behalf of all Defendants, has also confirmed that "IV does not authorize First Horizon or First Horizon's customers or partners to practice any of the above patents and/or other IV patent rights without a license." *See, e.g.,* Exhibit 14. Intellectual Ventures Management, by and on behalf of all Defendants, has accused First Horizon of "Efficient infringement." *See, e.g.,* Exhibits 10, 12. Upon information and belief, "efficient infringement" refers to a business practice where a company intentionally infringes on another company's patent because it's cheaper than paying for a license. Intellectual Ventures Management, by and on behalf of all Defendants, has threatened "escalation" if First Horizon does not license the patents in the Intellectual Ventures Management Patent Portfolio, including the '391 Patent, and identified patent litigation cases filed by entities under common ownership or control as Intellectual Ventures Management and/or entities to which Intellectual Ventures Management is the agent and/or legal representative as threatening examples. *See, e.g.,* Exhibit 10.

206.    In his September 23, 2024 letter, Steve Joroff on behalf of Defendants alleged that "First Horizon's use of Secure Payment Processing" by certain third-party "Clover®" branded software using the 3-D Secure protocol and as shown at https://www.firsthorizon.com/Landing/Business/Merchant-Services and https://docs.clover.com/docs/use-3ds are examples of First Horizon's "infringing products" and specified that "First Horizon's use of Secure Payment Processing" by third-party "Clover®" branded software using the 3-D Secure protocol infringes at least claim 18 of the '391 Patent (the "'391 Accused System"). *See* Exhibit 14.

207.    First Horizon does not make, use, offer to sell, or sell any product and/or system within the United States (including but not limited to the '391 Accused System) or import into the

United States any product and/or system (including but not limited to the '391 Accused System) in a manner which infringes the '391 Patent.

208.    By way of example, each independent claim of the '391 Patent requires, *inter alia*, that the accused system or method receive information about "a first type of transaction" and "a second type of transaction" wherein "the second type of transaction is different from the first type of transaction." *See* U.S. Pat. No. 10,567,391 to Hardt at Claim 1; Claim 10; Claim 18.

209.    Upon information and belief, and based on the representations made about the 3-D Secure protocol on the "3dsecure2" website, the '391 Accused System (1) "allows issuers to approve a transaction without the need to interact with the cardholder" and (2) "will only require additional authentication if the risk is high." *See* https://3dsecure2.com/frictionless-flow/ (last accessed Oct. 4, 2024).

210.    Upon information and belief, and based on the representations made on the "3dsecure2" website, the '391 Accused System provides for multiple authentication methods related to a single transaction, rather than for authentication of two different transactions.  *Id.*

211.    At least in light of this representation, and on information and belief, the '391 Accused System does not include information about "a first type of transaction" and "a second type of transaction" wherein "the second type of transaction is different from the first type of transaction" as recited by each independent claim of the '391 Patent.

212.    Accordingly, First Horizon does not directly infringe the '391 Patent, either literally or under the doctrine of equivalents.

213.    Furthermore, at least because there is no direct infringement, there is also no indirect infringement, and First Horizon does not induce infringement of the '391 Patent or otherwise contribute to infringement of the '391 Patent.

214.    An actual, justiciable, substantial, and immediate controversy exists between First Horizon and Defendants as to whether First Horizon has infringed and/or is infringing the '785 Patent.

215.    The controversy between the parties is sufficient to entitle First Horizon to a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 that First Horizon (including but not limited to through its use of the '391 Accused System) has not infringed and does not infringe the '391 Patent.

## COUNT V
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '862 PATENT

216.    First Horizon incorporates and realleges the foregoing paragraphs as if fully set forth herein.

217.    Intellectual Ventures Management, by and on behalf of all Defendants, has indicated that, absent a license, they intend to enforce their intellectual property rights against First Horizon.  Intellectual Ventures Management, by and on behalf of all Defendants, has alleged that "Intellectual Ventures (IV) holds numerous patents covering various technologies that First Horizon is using, and therefore, they need to be licensed to IV's patent portfolio."  *See, e.g.,* Exhibit 12.  Intellectual Ventures Management, by and on behalf of all Defendants, has stated unequivocally that "First Horizon Corp. is required to obtain a license for its operations" of at least the five Patents-In-Suit, including the '862 Patent.  *See, e.g.,* Exhibit 15.  Intellectual Ventures

Management, by and on behalf of all Defendants, has also confirmed that "IV does not authorize First Horizon or First Horizon's customers or partners to practice any of the above patents and/or other IV patent rights without a license." *See, e.g.,* Exhibit 14. Intellectual Ventures Management, by and on behalf of all Defendants, has accused First Horizon of "Efficient infringement." *See, e.g.,* Exhibits 10, 12. Upon information and belief, "efficient infringement" refers to a business practice where a company intentionally infringes on another company's patent because it's cheaper than paying for a license. Intellectual Ventures Management, by and on behalf of all Defendants, has threatened "escalation" if First Horizon does not license the patents in the Intellectual Ventures Management patent portfolio, including the '862 Patent, and identified patent litigation cases filed by entities under common ownership or control as Intellectual Ventures Management and/or entities to which Intellectual Ventures Management is the agent and/or legal representative as threatening examples. *See, e.g.,* Exhibit 10.

218.    In his September 23, 2024 letter, Steve Joroff on behalf of Defendants alleged that "First Horizon's use of Point-of-Sale Systems" provided by third party Clover® and as shown at "https://www.firsthorizon.com/Landing/Business/Merchant-Services"                    and "https://www.clover.com/pos-systems" are examples of First Horizon's "infringing products" and specified that "First Horizon's use of Point-of-Sale Systems" provided by third party Clover® infringe at least claim 1 of the '862 Patent (the "'862 Accused System"). *See* Exhibit 14.

219.    First Horizon does not make, use, offer to sell, or sell any product and/or system within the United States (including but not limited to the '862 Accused System), or import into the United States any product and/or system (including but not limited to the '862 Accused System) in a manner which infringes the '862 Patent.

220.    By way of an example, each independent claim of the '862 Patent requires, *inter alia*, a portable housing that meets the claim limitations which include having "a software application in the non-volatile memory comprising a series of programs designed to perform specific functions" and "wherein the software application can function as a key which will serve to unlock the POS device [or PC] when connected and lock the device [or PC] when unconnected." *See* '862 Patent at Claim 1; Claim 8.

221.    Upon information and belief, the '862 Accused Device does not include at least a portable housing as claimed in each independent claim in the '862 Patent that has "a software application in the non-volatile memory comprising a series of programs designed to perform specific functions . . . wherein the software application can function as a key which will serve to unlock the POS device [or PC] when connected and lock the device [or PC] when unconnected." *See* https://www.clover.com/pos-systems (last accessed Oct. 4, 2024).

222.    Accordingly, First Horizon does not directly infringe the '862 Patent, either literally or under the doctrine of equivalents.

223.    Furthermore, at least because there is no direct infringement, there is also no indirect infringement, and First Horizon does not induce infringement of the '862 Patent or otherwise contribute to infringement of the '862 Patent.

224.    Therefore, an actual, justiciable, substantial, and immediate controversy exists between First Horizon and Defendants as to whether First Horizon has infringed and/or is infringing the '862 Patent.

225.    The controversy between the parties is sufficient to entitle First Horizon to a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57 that First Horizon (including but not limited to through its use of the '862 Accused System) has not infringed and does not infringe the '862 Patent.

## VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests that this Court grant the following relief:

1.    A declaratory judgment that First Horizon has not infringed the '785 Patent;

2.    A declaratory judgment that First Horizon has not infringed the '844 Patent;

3.    A declaratory judgment that First Horizon has not infringed the '722 Patent;

4.    A declaratory judgment that First Horizon has not infringed the '391 Patent;

5.    A declaratory judgment that First Horizon has not infringed the '862 Patent;

6.    A declaration that Intellectual Ventures Management, LLC, is the agent and representative of Intellectual Ventures I LLC, Intellectual Ventures II LLC, Callahan Cellular L.L.C., and OL Security Limited Liability Company and has acted in that capacity regarding the Patents-in-Suit;

7.    A declaration that this case is exceptional within the meaning of 35 U.S.C. § 285, thereby entitling First Horizon to recovery of its costs including reasonable attorneys' fees under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law, including this Court's inherent authority;

8.    Declaring that judgment be entered in favor of First Horizon, and against Defendants on First Horizon's claims;

9.    An order enjoining Defendants and those in privity with Defendants from asserting the '785, '844, '722, '391, and '862 Patents against First Horizon and First Horizon's representatives, agents, affiliates, subsidiaries, vendors and customers; and

10.    Such other equitable and/or legal relief as this Court may deem proper and just under the circumstances.

Dated:  October 16, 2025

Respectfully submitted,

*Lea H. Speed*

Adam S. Baldridge (BPR No. 23488)
Lea Speed (BPR No. 19410)
abaldridge@bakerdonelson.com
lspeed@bakerdonelson.com
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Tele: (901) 577-2102 / Fax:  (901) 577-2303

Edward D. Lanquist, Jr. (TN Bar No. 13303)
Dominic A. Rota (TN Bar No. 37622)
elanquist@bakerdonelson.com
drota@bakerdonelson.com
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
Tele: (615) 726-5581 / Fax:  (615) 726-0464

*Attorneys for First Horizon Bank*